PILLSBURY WINTHROP SHAW PITTMAN LLP
KENNETH E. KELLER (SBN 071450) kenneth.keller@pillsburylaw.com
VIJAY K. TOKE (SBN 215079) vijay.toke@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111
Telephone: (415) 983-1084
Facsimile: (415) 983-1200

JASON R. ERB (SBN 180962) jerb@hmausa.com
JAMES M. NAH (SBN 306225) jnah@hmausa.com
HYUNDAI MOTOR AMERICA
10550 Talbert Avenue
Fountain Valley, California 92708
Telephone: (714) 965-3393
Facsimile: (714) 965-3815

Attorneys for Plaintiffs,
HYUNDAI MOTOR AMERICA, INC.,
HYUNDAI MOTOR COMPANY

THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HYUNDAI MOTOR AMERICA, INC. a California corporation, HYUNDAI MOTOR COMPANY, a Korean corporation,

Plaintiffs,

vs.

PENTIUS USA, INC. dba PENTIUS AUTOMOTIVE PARTS, a California corporation,

Defendant.

**CASE NO.:**

**COMPLAINT FOR: (1) TRADEMARK INFRINGEMENT (15 U.S.C. §§ 1114); (2) FALSE DESIGNATION OF ORIGIN (15 U.S.C. §§ 1125(a)(1)(A)); (3) FALSE ADVERTISING (15 U.S.C. §§ 1125 (a)(1)(B)); (4) TRADEMARK DILUTION (15 U.S.C. § 1125(c)); (5) COMMON-LAW UNFAIR COMPETITION; (6) UNFAIR COMPETITION (CAL. B&P CODE § 17200).**

**JURY TRIAL DEMANDED**

Plaintiffs HYUNDAI MOTOR AMERICA, INC. ("HMA") and HYUNDAI MOTOR COMPANY ("HMC") (HMA and HMC are collectively referred to where appropriate as "Hyundai" or "Plaintiffs") assert the following claims against Defendant PENTIUS USA, INC. dba Pentius Automotive Parts, a California corporation ("Pentius" or "Defendant"):

**NATURE OF ACTION**

1. This is an action for damages and injunctive relief for (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114; (2) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); (3) false descriptions in violation of Lanham Act Section 43(a)(1)(B) (15 U.S.C. § 1125(a)(1)(B); (4) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); and (5) related claims arising under common law and California law.

2. HMC is a world-renowned company that manufactures, sells, and distributes to the United States Hyundai-branded automobiles and genuine Hyundai-branded parts through Hyundai's Authorized Chain of Distribution (as defined in Paragraph 26, below) in and to the United States.

3. HMA is the exclusive distributor of those Hyundai-branded automobiles and genuine Hyundai-branded parts in the United States. The only "genuine" Hyundai-branded parts are those that are manufactured by Hyundai-authorized manufacturers or suppliers, which are then imported into and distributed throughout the United States by HMA through Hyundai's Authorized Chain of Distribution to authorized Hyundai dealers. Such genuine Hyundai-branded parts are referred to in warranty documents and herein as "Hyundai Genuine Parts."

4. Hyundai Genuine Parts are made to precise specifications and, with respect to certain such Hyundai Genuine Parts (such as brakes, bumpers, and other body parts), must meet Federal Motor Vehicle Safety Standards ("FMVSS") to be sold and used in the United States. That is not true for those Hyundai-branded parts

meant for sale and use in other foreign countries, markets, regions, or geographic areas outside of the United States and whose sale and use is specifically restricted by contract to countries, markets, regions, or geographic areas outside of the United States and are not intended to be imported into or sold in the United States. Hyundai-branded parts that are not sourced through Hyundai's Authorized Chain of Distribution for the United States may contain numerous material differences as compared to Hyundai Genuine Parts, including, but not limited to, differences in language, individual packaging, labeling, shipping boxes or containers, production methods, weight, performance characteristics, manufacturing processes, and, for certain parts, differences in the applicable safety standards, and are not subject to Hyundai's quality control, support, or inspection in the United States. Other such parts may also be "seconds," defective parts, rejected parts, or even counterfeit parts. These parts have been sourced from distribution sources in foreign countries, markets, regions, or geographic areas outside of the United States.

5. Furthermore, Hyundai-branded parts that are not sourced through Hyundai's Authorized Chain of Distribution for the United States are materially different in warranty coverage and/or protection. Hyundai-branded parts that are not Hyundai Genuine Parts, and have not been sourced through Hyundai's Authorized Chain of Distribution for the United States are not approved by HMA or covered under Hyundai's warranties, as described herein.

6. As a result of these material differences, the importation, sourcing, acquisition, advertisement, distribution, offering for sale and/or sale of these illegal gray-market parts in the United States constitute the sale of illegal gray-market goods in the United States. Such parts are referred to herein as "Illegal Gray Market Hyundai Parts."

7. Defendant is importing, sourcing, promoting, offering for sale, advertising (by using the internet, electronic mail, and other media to advertise), distributing and/or selling Illegal Gray Market Hyundai Parts. These Illegal Gray

Market Hyundai Parts are intended for sale and use only in foreign countries, markets, regions, or geographic areas outside of the United States, and may include seconds, defective or rejected parts, or even counterfeits. Whichever category particular parts imported by Pentius fall into, none of them are intended for sale or use in the United States. Hyundai, by its agreements with its manufacturers or distributors in those other foreign countries, markets, regions, or geographic areas outside of the United States, specifically restricts the sales of these parts to those specific foreign markets, areas, or regions outside of the United States. Furthermore, Hyundai does not approve the sale of such parts to anyone for importation into, or sale in, the United States.

8. Defendant is further falsely representing and advertising to its customers in the United States that Defendant is importing, promoting, offering for sale, advertising, distributing and/or selling "Genuine" Hyundai Parts or that such parts are "OEM." Defendant explicitly or by implication further falsely represents and advertises that such parts contain no differences from Hyundai Genuine Parts. By referring to its parts as "Genuine" or "OEM," Defendant implies, misleads, or gives the impression that its parts are covered by Hyundai's warranties, when, in fact, these parts are not Hyundai Genuine Parts, and/or are not covered by the Hyundai warranty. In fact, one of Defendant's own former salespeople has admitted in another litigation that he understood that Hyundai's warranty would not apply to the Illegal Gray Market Hyundai Parts being sold by Defendant, yet Pentius has failed to convey these facts to its customers.

9. Defendant further does not notify the persons or entities to whom they market, offer for sale, or sell such parts that these parts are not Hyundai Genuine Parts, were not sourced through Hyundai's Authorized Chain of Distribution for the United States, are restricted solely for sale and use in foreign countries, markets, regions, or geographic areas outside of the United States, are not intended to be imported into the United States, and/or are not covered by Hyundai warranties or that

the warranty, if any, offered by Defendant is materially different from the Hyundai warranties.

10. Hyundai is informed and believes and thereon alleges that Defendant does not offer a warranty on the Illegal Gray Market Hyundai Parts it sells that is equivalent to the applicable HMA Warranties (as defined in paragraph 43 below).

11. Moreover, Defendant's representations, including but not limited to that they are selling "genuine" or "OEM" Hyundai parts causes a likelihood of confusion leading the purchasers of those parts to believe that Defendant is an authorized representative or authorized distributor of Hyundai or of Hyundai Genuine Parts (which it is not), that the parts are Hyundai Genuine Parts (which they are not), and/or that the HMA Warranties apply to these parts (which they do not). Defendant's representations that these parts are "genuine" also make the purchasers of those parts unaware of the material differences between Defendant's parts and Hyundai Genuine Parts and between the Hyundai warranty and whatever warranty Defendant offers, if it offers any warranty at all.

## THE PARTIES

12. HMC is a Korean company, located in Seoul, Republic of Korea. HMC manufactures and sells automobiles and automobile parts under the Hyundai brand. HMC also has parts manufactured for use on its motor vehicles by third parties located in Korea. HMC is the owner of certain trademarks associated with the Hyundai line of automobiles and automobile parts. HMC has an economic interest in the trademarks, trade names, trade dress, and designations of origin of the mark "Hyundai," whether used alone or in conjunction with other words or marks.

13. HMA is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located in Fountain Valley, California. HMA has been granted the exclusive license by HMC to distribute and sell Hyundai brand vehicles and Hyundai Genuine Parts in the United States that bear the trademarks, trade names, and/or trade dress of HMC, and HMA has the right to

enforce those rights and/or sub-license those rights to dealers, distributors, and others. HMA only sources these Hyundai Genuine Parts for sale to Hyundai authorized dealers through Hyundai's Authorized Chain of Distribution for the United States and only such parts sourced through Hyundai's Authorized Chain of Distribution for the United States are recognized by HMA and the industry as Hyundai Genuine Parts, which are covered by the applicable Hyundai warranties as described below.

14. HMA is also the owner of certain registered trademarks associated with the Hyundai line of automobiles and automobile parts. HMA has an economic interest in the trademarks, trade names, trade dress, and designations of origin of the mark consisting of a stylized "H" design within an ellipse design whether used alone or in conjunction with other words or marks.

15. Hyundai is informed and believes and thereon alleges that Defendant Pentius is a California corporation with its principal place of business located at 14849 E. Northam Street, La Mirada, California 90638. Defendant also has a registered agent for service of process, San Joon Kim, located at this same address, located within this District.

16. Defendant has imported, sourced, acquired, solicited for sale, advertised, promoted, distributed, offered for sale and/or sold the Illegal Gray Market Hyundai Parts that are the subject of this complaint in this State and in this District. Specifically, Defendant purchases Illegal Gray Market Hyundai Parts from Korean trading companies selling Hyundai-branded parts made for the Korean market and intended for sale only within that market. Defendant also directly or indirectly, imports, acquires, sources, distributes, advertises, solicits, offers for sale and/or sells automobile parts, including the Illegal Gray Market Hyundai Parts at issue in this Complaint, through solicitations, including but not limited to through the use of electronic mail, to third parties within this District and throughout the United States.

**JURISDICTION AND VENUE**

17. Jurisdiction of this action is premised upon 15 U.S.C. § 1121 and 28

U.S.C. §§ 1331, 1338(a), and 1338(b). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). The amount in controversy as alleged herein exceeds the jurisdictional limit of this Court.

18. This Court has personal jurisdiction over Defendant because Defendant is incorporated in California and is doing business within, and has a business location in, this State and this District and is importing, promoting, sourcing, advertising, distributing, offering for sale, and/or selling the Illegal Gray-Market Hyundai Parts at issue in this Complaint into this State and this District, and which activities have caused and will continue to cause injury and damage to Hyundai within this State and this District, and further because Defendant continuously and systematically conducts, transacts, and solicits business in this State and within this District.

19. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(a) because Defendant resides in this District, as defined in Section 1391(a), and pursuant to Section 1391(b) because a substantial part of the acts, events, and omissions giving rise to Hyundai's claims occurred in this Judicial District.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20. HMC was established in 1967 as a Korean company and has become a worldwide leader in the automotive market. HMC currently designs, manufactures, markets, distributes, and sells a wide range of automobile and related automobile parts in more than 190 countries throughout the world, including the United States, under the trademark "Hyundai" and the distinctive forward leaning "H" within an oval design.

21. HMA is a subsidiary of HMC and, since 1986, HMA has been the exclusive distributor in the United States of Hyundai motor vehicles and Hyundai Genuine Parts and accessories. Those Hyundai Genuine Parts and accessories include but are not limited to: Service Kit Oil Filters (Part Nos. 26300-35503 and 26300-35504), key blanks (Part Nos. 81996-1E000, 81996-1R000, 81996-29000, 81996-2B010, 81996-28000, 81996-39000, 81996-3K000, and 81996-3S000), and

thousands of others.

22. HMA imports the Hyundai Genuine Parts through Hyundai's Authorized Chain of Distribution for the United States exclusively for sale to, distribution to, and/or use by Hyundai authorized dealers pursuant to a Dealer Sales and Service Agreement (the "DSSA"). Pursuant to the terms of the DSSA, if a Dealer sells or installs any part or accessory that is not a "Hyundai Genuine Part or Accessory," the Dealer must disclose that fact to the customer and advise the customer that the item is not included in the warranties furnished by HMA or HMC.

**HYUNDAI'S AUTHORIZED CHAIN OF DISTRIBUTION FOR THE UNITED STATES FOR HYUNDAI GENUINE PARTS**

23. Hyundai Mobis (also known as Mobis Korea or Mobis HQ), is a Korean company within the Hyundai family of companies located in Seoul, Republic of Korea. Pursuant to a contractual arrangement with HMC, Hyundai Mobis is responsible for the sourcing of Hyundai parts from third party manufacturers, primarily located in Korea and for the distribution of those Hyundai parts throughout the world for use on and/or for the repair and servicing of Hyundai vehicles after they have been sold.

24. Hyundai Mobis has distribution centers throughout the world, including the United States. With respect to the United States, Mobis Parts America ("MPA") is a subsidiary of Hyundai Mobis, which is responsible for the importation of Hyundai Genuine Parts into the United States and for the logistics and distribution of those Hyundai Genuine Parts on behalf of HMA to its dealers.

25. However, Hyundai parts distributed in foreign countries, markets, regions, or geographic areas outside of the United States are specifically not intended for importation into, distribution to, or sale or use in the United States. In fact, HMC and Hyundai Mobis have contractual agreements with their manufacturers, suppliers, and/or distributors in such foreign countries, markets, regions, or geographic areas outside of the United States that expressly restrict the sale of these Hyundai parts to

those foreign countries, markets, regions, or geographic areas covered by the agreement and Hyundai does not approve the sale of those parts to individuals or entities in those foreign countries, markets, regions, or geographic areas for sale to or export into the United States.

26. Thus, the only authorized chain of distribution for Hyundai Genuine Parts for the United States is from Hyundai Mobis to MPA in the United States, which then facilitates the sale and distribution of these Hyundai Genuine Parts, including but not limited to service oil filters, key blanks, and remote keys on behalf of HMA to authorized Hyundai Dealers ("Hyundai's Authorized Chain of Distribution").

**HYUNDAI'S TRADEMARKS**

27. HMC and/or HMA sell motor vehicles, automotive parts, accessories, and related services, including the Hyundai Genuine Parts, under the following family of registered United States trademarks:

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| HYUNDAI | 1104727 | October 24, 1978 | For International Class 12 for: Cars, trucks and buses |
| HYUNDAI | 3991863 | July 12, 2011 | For International Classes 7 and 12 for: Water pumps for land vehicles; cylinder heads used on engines; pistons for land vehicles; fans for motors and engines; vehicle engine parts, namely, oil coolers; oil filters |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
| --- | --- | --- | --- |
| | | | for land vehicles; vehicle parts, namely, radiator supporting panels; radiator grilles for land vehicles and<br><br>For: Bearings for land vehicles, namely, axle bearings, engine bearings, wheel bearings; engines and motors mufflers; clutch covers for land vehicles; transmissions for land vehicles; disk brakes for land vehicles; rearview mirrors for automobiles; windscreen wipers for automobiles; rubber belts for land vehicles; fuel tanks for land vehicles; wheels caps for land vehicles; bumpers for automobiles; hoods for automobiles; doors for automobiles; trunk panels for land vehicles; bumpers for land vehicles; door handles for automobiles; aerials for automobiles; horns for automobiles |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
|  | 1569538 | December 5, 1989 | For International Class 12 for: Automobiles and structural parts thereof |
|  | 4065195 | December 6, 2011 | For International Class 12 for: Bearings for land vehicles, namely, axle bearings, wheel bearings; mufflers for land vehicles; transmissions for land vehicles; rearview mirrors for automobiles; bumpers for automobiles; windscreen wipers for automobiles; seat covers for automobiles; tire chains for automobiles; radiator grills for land vehicles; body panels for vehicles; air bags for vehicles; swing doors for vehicle engines; glasses for vehicles, namely, glass windows for vehicles; clutches for land vehicles; fan motors for vehicles; air sensors for vehicles; brake pads for land vehicles; suspensions for vehicles, namely, wheel |

| MARK | REG. NO. | REGISTRATION DATE | GOODS |
|---|---|---|---|
| | | | suspensions, suspension struts; springs for vehicles, namely, coil springs, leaf springs; speed sensors for vehicles; sun roofs for vehicles; fuel gauges for vehicles; oil seals for vehicles, namely, transmission seals; wiper motors for vehicles; control units for vehicles, namely, air suspension valves for controlling suspension height for vehicles, electronic stability system to allow better control and maneuverability of trucks and trailers, sold as an integral component of trucks; pedals for vehicles, namely, brake pedals, gas pedals |

28. HMC is the owner of U.S. Registration No. 1,104,727; U.S. Registration No. 3,991,863; and U.S. Registration No. 4,065,195 (the "HMC Marks"). HMA is the owner of U.S. Registration No. 1,569,538 (the "HMA Mark"). The HMC Marks and the HMA Mark are collectively referred to as the "Hyundai Marks." Copies of the registrations for the Hyundai Marks are attached hereto as EXHIBIT A.

29. All the above federal registrations are in full force and effect and are in good standing.

30. HMA is also a licensee of the HMC Marks, in association or connection

with the promotion, distribution, sale, and/or service of Hyundai brand automobiles and Hyundai Genuine Parts in the United States.

31. Independent of the foregoing registrations, HMA and/or HMC own and hold common-law rights in the Hyundai Marks, including nationwide common law trademarks based on sales of Hyundai vehicles and Hyundai Genuine Parts throughout the United States.

32. The Hyundai Marks have all been used in commerce continuously in the United States by HMA and/or HMC prior to Defendant's usage of the same or similar marks and designations of origin, as described herein.

33. HMA exercises great care in selecting authorized Hyundai Dealers in the United States. In doing so, substantial time, money, and effort is expended by HMA to control the nature and quality of the goods and services which the Hyundai Dealers may employ in using the Hyundai Marks. In the United States, the agreement between Hyundai and its Dealers specifies the circumstances under which only Hyundai Genuine Parts may be used, such as in the performance of work done under warranty for a customer or for recall and campaign services. Additionally, authorized Hyundai Dealers in the United States market and sell Hyundai Genuine Parts to retail customers, consumers, and others as part of customer-pay service work or over the counter.

34. HMA and HMC also expend significant time, money, and effort in ensuring that Hyundai Genuine Parts comply with its stringent internal quality standards and, where applicable, with FMVSS in the United States.

35. For many years, HMA and HMC have incurred substantial expense advertising Hyundai motor vehicles and/or products, including the Hyundai Genuine Parts, and related services and to further promote and develop the Hyundai Marks. This substantial expenditure of time, money, and effort has resulted in a reputation for exceptionally high-quality standards. For two years in a row, Hyundai has ranked in the top three brands in J.D. Power's Initial Quality Study. In 2019, Hyundai took

two of three titles for North American Car of the Year for the Hyundai Kona (2019 Utility Vehicle of the Year) and Genesis G70 (2019 Car of the Year). HMA and HMC have also heavily invested in marketing strategies, packaging, promotional materials, and specific products for the market in the United States, consistent with this reputation and high-quality standards. Hyundai vigorously protects its reputation and goodwill by maintaining the highest standards in its products, appearance, and customer service.

36. Because of these efforts, the Hyundai Marks, and the products and services which use them, have developed substantial good will and have established secondary meaning in the United States.

37. The Hyundai Marks were famous in the United States long before the acts of Defendant set forth herein.

**MANUFACTURE OF HYUNDAI GENUINE PARTS**

38. Pursuant to contracts with HMC or Hyundai Mobis, a variety of manufacturers or suppliers from around the world—but primarily in Korea—manufacture parts for HMC according to HMC's specifications. These Hyundai parts are used in Hyundai's manufacturing plants in Korea, the United States, and elsewhere to manufacture Hyundai vehicles which ultimately will be sold in the United States. These manufacturers also make Hyundai parts which are distributed through Hyundai's Authorized Chain of Distribution for the United States for use in the servicing, warranty work, and/or repair of Hyundai vehicles in the United States by Hyundai Dealers.

39. These manufacturers also manufacture parts for Hyundai to use on or for the servicing and repair of Hyundai vehicles to be sold in other foreign countries, regions, markets, or geographic areas around the world other than the United States. However, pursuant to agreements between HMC and/or Hyundai Mobis and these manufacturers and/or the distributors in these foreign countries, markets, regions, and geographic areas of the world, such parts can only be sold in those specific foreign

countries, regions, markets, and/or geographic areas in the world. Such parts are not intended to be exported to or sold to any other entity or individual for export to the United States for importation, use, distribution, or sale in the United States, and Hyundai does not approve of such importation, use, distribution or sale.

40. Such parts intended for foreign countries, regions, markets, or geographic areas of the world may be materially different from Hyundai Genuine Parts intended for the U.S. Market, in various respects, including but not limited to the design of and the languages appearing on individual packaging, labeling, and/or shipping containers, performance, testing, reliability, specifications, and with respect to certain parts, compliance with applicable U.S. safety standards and regulations, including without limitation FMVSS.

41. Hyundai parts that are not sourced through Hyundai's Authorized Chain of Distribution for the United States may also have physical differences due to being "seconds," rejects, defective, or even counterfeit parts. Hyundai also do not control the storage transportation, or quality control of such parts that are imported into and sold outside Hyundai's Authorized Chain of Distribution.

42. Because of these material differences, if an Illegal Gray Market Hyundai Part is used during the repair or servicing of Hyundai vehicles or as a replacement part for warranty work or otherwise, compatibility, performance and/or safety issues can arise.

## HMA'S WARRANTY PROGRAM

43. HMA offers a robust warranty program that includes *inter alia*: (1) a New Vehicle Limited Warranty; (2) a Powertrain Limited (Original Owner) Warranty; (3) an Anti-Perforation Warranty; and (4) a Replacement Parts and Accessories Limited Warranty (collectively, the "HMA Warranties").

44. The HMA New Vehicle Limited Warranty coverage is for 5 years or 60,000 miles and attaches to automobile purchases and covers a variety of parts incorporated within different Hyundai automobiles. The HMA Powertrain Limited

(Original Owner) Warranty coverage period is 10 years or 100,000 miles to the original vehicle owner and covers the powertrain component. The HMA Anti-Perforation Warranty coverage period is 7 years and covers rust holes that may develop in vehicle body sheet metal due to defects. Finally, the HMA Replacement Parts and Accessories Limited Warranty provides for a period of 12 months or 12,000 miles coverage for repair or replacement of any Hyundai Genuine Part or Accessory supplied from HMA that is found to be defective in material or workmanship under normal use and maintenance.

45. Moreover, for vehicles within the HMA New Vehicle Limited Warranty coverage period, replacement of certain parts would be covered for 5 years or 60,000 miles under that warranty. This, in effect, "extends" the Replacement Parts and Accessories Limited Warranty coverage period through the remainder of the new vehicle warranty, which can be greater than 12 months or 12,000 miles.

46. The HMA Warranties, however, only apply to Hyundai Genuine Parts, which HMA defines in its warranty documents as parts supplied from HMA (through MPA), i.e., through Hyundai's Authorized Chain of Distribution for the United States and approved by HMA. Thus, the HMA Warranties do not extend to parts sold to its authorized Hyundai Dealers, or other third parties, including but not limited to collision or repair facilities or insurance companies, by any other entity other than HMA through Hyundai's Authorized Chain of Distribution.

47. HMA's warranty program—commonly known and referred to as "America's Best Warranty" or "Hyundai Assurance"—is a critical component in its quality control process and allows HMA to ensure that the value and goodwill of its trademarks are maintained. The warranty program is also essential to the successful marketing of Hyundai products because it provides assurance to the Hyundai customer that his or her purchase will achieve certain performance standards during the warranty period. HMA has long recognized that the HMA warranty program has substantial value and is an important and necessary part of the automotive goods

purchased by its customers. Likewise, HMA's Warranties are important and valuable to authorized dealers. The value that the warranties add to Hyundai vehicles is the reason HMA assumes the economic cost of the warranty program and promotes and markets the warranty to customers.

48. Parts manufactured for sale and/or intended for use solely in foreign countries, markets, regions, or geographic areas outside of the United States, on the other hand, carry no warranty whatsoever from HMA in the United States; nor does Hyundai approve the use of any such parts in the repair or servicing of Hyundai vehicles. In addition, any damage to or failure of a Hyundai vehicle caused by the installation or failure of an Illegal Gray Market Hyundai Part, is not and would not be covered by any Hyundai warranty, including the HMA Warranties.

## DEFENDANT'S INFRINGING AND UNLAWFUL ACTS

49. Defendant has admitted under oath that it is using unauthorized chains of supply and distribution from foreign countries, regions, markets, or geographic areas of the world outside of the United States—specifically Hyundai-branded parts manufactured for, destined for, and contractually restricted to the Korean domestic market—to import, source, distribute, advertise, market, offer for sale and/or to sell the Illegal Gray Market Hyundai Parts.

50. Defendant is not an authorized representative of Hyundai, Hyundai Mobis, or MPA. Defendant is not authorized to import, source, advertise, distribute, offer for sale, or sell any Hyundai parts in the United States, nor does Hyundai approve of such importation or sale.

51. Hyundai is informed and believes, and thereon alleges, that commencing long after Hyundai's first use of the Hyundai Marks, and without Hyundai's consent or approval, Defendant has and continues to actively and knowingly import, distribute, advertise, promote, offer for sale and/or sell in the United States, replacement automotive parts bearing the Hyundai Marks, which Hyundai did not intend nor approve for sale or use in the United States, but rather were intended for

sale only in foreign countries, regions, markets, or geographic areas elsewhere in the world, which parts contain material physical differences in labeling, individual packaging, shipping containers, performance characteristics, compliance with regulations, and/or material differences in warranty coverage and protection from and as compared to Hyundai Genuine Parts.

52. Defendant has admitted under oath that it represents to its customers that its parts are "Genuine" or OEM, through its actions, advertisements, representations, and otherwise, creates an impression that the Hyundai parts it is offering for sale are Hyundai Genuine Parts (i.e., Original Equipment purchased, distributed, and sold through Hyundai's Authorized Chain of Distribution in the United States), which creates a likelihood of confusion among Defendant's customers, including the general public, regarding the source of Defendant's parts and the applicability of Hyundai's warranties to those parts, as well as the other material differences between Hyundai Genuine Parts and the Illegal Gray Market Hyundai Parts Pentius is importing, distributing, advertising, promoting, offering for sale, and selling in the United States.

53. Hyundai has never imported, promoted, distributed, approved, authorized, and/or sold Defendant's Illegal Gray Market Hyundai Parts into the United States, and has never authorized the importation, promotion, distribution, and/or sale of Defendant's Illegal Gray Market Hyundai Parts for sale and/or use in the United States.

54. Furthermore, the individual parts being sold by Defendant and/or the shipping containers, individual packaging, and labeling for those parts, have one or more material physical difference as compared to the Hyundai Genuine Parts and the packaging and shipping containers for Hyundai Genuine Parts which are imported by Hyundai into the United States through Hyundai's Authorized Chain of Distribution for the United States and which are meant for sale and use in the United States. Thus, Hyundai cannot guarantee the chain of control, transport, storage, quality,

origin, testing, and/or safety of the parts that Defendant offers for sale nor do Hyundai's warranties, including the HMA Warranties, cover these parts.

55. Hyundai is informed and believes and thereon alleges that Defendant does not offer any warranty on the parts that it offers for sale or sells, and if it does, such warranty is inferior to, and therefore materially different from, the HMA Warranties.

56. Defendant has sold its Illegal Gray Market Hyundai Parts for several years to various customers in the United States from its offices in La Mirada, California, which is in this District. For example, from this District Defendant sold various Illegal Gray Market Hyundai Parts to Alliance Automotive ("Alliance") in Minnesota, totaling over 90,000 parts over several years, and to Trans World Services, Inc. in Texas.

57. The parts that Defendant sold, of which Hyundai is aware, were Service Kit Oil Filters (Part Nos. 26300-35503 and 26300-35504) and key blanks (Part Nos. 81996-1E000, 81996-1R000, 81996-29000, 81996-2B010, 81996-28000, 81996-39000, 81996-3K000, and 81996-3S000).

58. Hyundai has inspected certain Illegal Gray Market Hyundai Parts that Defendant sold and the shipping and individual packaging of those parts and compared them to Hyundai Genuine Parts and the shipping and individual packing for Hyundai Genuine Parts. The results of these inspections confirmed that the Illegal Gray Market Hyundai Parts that Defendant sold were intended for sale and use in foreign countries, markets, regions, and geographic areas around the world, specifically the Korean domestic market, not the United States. Defendant has admitted under oath these goods are gray market goods not intended for the U.S. market.

59. Based on its inspection of the Illegal Gray Market Hyundai Parts that Defendant sold, several material differences were observed by Hyundai, including but not limited to the following: marking and labeling differences on the shipping

containers for the oil filters, including the use of different color ink, different fonts, different graphics, different arrows, the use of Korean characters and different sealing tape on shipping containers, and the presence of Korean quality control stickers; marking and labeling differences on the individual oil filter boxes including but not limited to differences in the wrapping material of the boxes, differences in the orientation of the Hyundai logo, the presence of Korean characters, different graphics, and different glue patterns; differences in the individual oil filters including different fonts and colors for text, differences in lot numbers, the presence of Korean quality control stickers, and differences in the text and hole sizes in the internal components; and differences in the packaging for key blanks including but not limited to different fonts and ink colors for text, different bar codes, the use of Korean characters, and the presence of Korean quality control stickers.

60. Hyundai is informed and believes and thereon alleges that Defendant is importing, promoting, advertising, distributing, offering for sale, and selling Illegal Gray Market Hyundai Parts, and even potentially counterfeit parts, to various third parties, representing that such parts are "Genuine" Hyundai or Hyundai MOBIS parts, when they are not. Defendant is importing these Illegal Gray Market Hyundai Parts through unauthorized sources of supply and distribution from foreign countries, markets, regions or geographic areas of the world outside of the United States and Defendant is not authorized or approved by Hyundai to import, use, or sell these parts in the United States.

61. Defendant is promoting, distributing, and selling these Illegal Gray Market Hyundai Parts to various third parties knowing that these third parties will use and install the Illegal Gray Market Hyundai Parts even though those parts are not Hyundai Genuine Parts.

62. By selling the Illegal Gray Market Hyundai Parts in the United States, without Hyundai's consent or approval, Defendant has deprived Hyundai of its ability to control the quality of its products and has misrepresented to consumers the origin

and quality of the Illegal Gray Market Hyundai Parts.

63. Defendant has knowingly used in commerce a reproduction, copy, or colorable imitation of the Hyundai Marks in connection with the importation, distribution, advertising, offering for sale, and/or sales of the Illegal Gray Market Hyundai Parts, which use is likely to cause confusion, mistake, and/or to deceive Pentius's customers, as well consumers further down the stream of commerce, including end consumers.

64. Defendant has, among other things, knowingly reproduced, copied, or colorably imitated Hyundai's rights in the common-law and registered Hyundai Marks and has knowingly applied such reproduction, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with all of which use is likely to cause confusion, or to cause mistake, or to deceive. The Illegal Gray Market Hyundai Parts sold by Defendant differ materially from the Hyundai Genuine Parts as described herein, physically, in shipping containers and individual packaging and in warranty coverage or lack thereof, and do not originate with, are not sponsored by, and are not approved by Hyundai, and are not distributed by Hyundai through Hyundai's Authorized Chain of Distribution for the United States.

65. Defendant is intentionally and willfully importing, purchasing, promoting, distributing, advertising, offering for sale, and/or selling in the United States, without Hyundai's authorization, approval and/or consent, the Illegal Gray Market Hyundai Parts to unfairly and fraudulently compete with Hyundai, and to benefit from the valuable and favorable reputation and goodwill of the Hyundai Marks, the Hyundai products, including but not limited to the Hyundai Genuine Parts and the Hyundai brand.

66. As alleged herein, Defendant has used and continues to use the Hyundai Marks in such a fashion as to intentionally create a false impression among the

consuming public that its goods originate from Hyundai or are sponsored by, approved by, managed by, and/or affiliated with Hyundai, and to misrepresent the origin, authenticity and quality of goods it has sold, namely claiming, suggesting, implying, or otherwise representing its Illegal Gray Market Hyundai Parts are Hyundai Genuine Parts, when they are not, and Defendant continues to engage in these false and deceptive practices.

67. Defendant's acts were and are likely to cause confusion and mistake among the public, customers, prospective customers insurance companies, suppliers, and others and to deceive them as to, among other things, (i) the affiliation, connection, and association of Defendant with Hyundai, (ii) the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Hyundai, and (iii) the nature, characteristics, and quality of Defendant's goods, services, or commercial activities; all of which was and is for the purpose of enhancing the commercial value of, or selling or soliciting sales of, Defendant's products, goods, or services.

68. By reason of the foregoing, Hyundai has suffered and will continue to suffer damage to its intellectual property rights, business, reputation, and goodwill and dilution of the distinctive quality of the Hyundai Marks, and lost income and profits, past and present, that Hyundai would have earned but for Defendant's acts.

69. The acts of Defendant alleged herein are knowing, intentional, willful, and extraordinary.

70. Hyundai's remedy at law is inadequate to compensate Hyundai fully for the injuries it is suffering. Defendant is continuing the foregoing activities and, unless enjoined, will continue to do so, furthering Hyundai's irreparable damage and harm. It would be extremely difficult or impossible to estimate the amount of compensation which would afford Hyundai complete monetary relief for such continuing acts and a multiplicity of judicial proceedings would be required in the absence of appropriate injunctive relief.

**FIRST CLAIM FOR RELIEF**

**TRADEMARK INFRINGEMENT**

**(15 U.S.C. § 1114)**

71. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 70 above.

72. Defendant's importation, promotion, advertisement, distribution, use, and/or threatened continued use in commerce, offering for sale, and/or sale of the Illegal Gray Market Hyundai Parts, which bear trademarks that are identical or nearly identical to the federally registered Hyundai Marks, constitute a wrongful use of an unauthorized reproduction, copy, or colorable imitation of one or more of the registered Hyundai Marks.

73. Defendant's importation, promotion, advertisement, distribution, use, and/or threatened continued use in commerce, offering for sale, and/or sale of the Illegal Gray Market Hyundai Parts have caused and/or are likely to continue to cause confusion, or to cause mistake, or to deceive, including but not limited to whether Hyundai guarantees and/or warrants the quality of the Illegal Gray Market Hyundai Parts, together constituting infringement of the Hyundai Marks.

74. Defendant's acts as alleged herein have been willful and such willful acts are intended to reap the benefit of Hyundai's reputation and goodwill that it has created in its Hyundai Marks, and constitute infringement of the federally registered trademarks, which HMA and/or HMC own and/or exclusively license, in violation of section 32 of the Lanham Act (15 U.S.C. § 1114).

75. As a direct and proximate result of Defendant's illegal conduct and activities, as alleged herein, Hyundai has suffered and will continue to suffer damages, including but not limited to lost profits from lost sales, disgorgement of Defendant's profits and damages to Hyundai, injury to its business reputation and goodwill in an amount presently unknown and to be ascertained at the time of trial,.

76. As a direct and proximate result of Defendant's illegal conduct and

activities as alleged herein, Hyundai has suffered immediate and irreparable injury to Hyundai, including its business, reputation, and goodwill, and such conduct will continue to damage Hyundai and deceive the public unless enjoined by this Court. Hyundai has no adequate remedy at law for the continuing injury and harm.

77. Defendant's infringement of the Hyundai Marks is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the Hyundai Marks and an exceptional case within the meaning of the Lanham Act section 35 (15 U.S.C. §1117). Hyundai is therefore entitled to recover three times the amount of its actual damages, disgorgement of Defendant's profits, and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

**SECOND CLAIM FOR RELIEF**

**FALSE DESIGNATION OF ORIGIN**

**(15 U.S.C. § 1125(a)(1)(A))**

78. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 77, above.

79. Defendant's use and threatened continued use in connection with importing, selling, offering for sale, advertising, marketing, promoting, and packaging the Illegal Gray Market Hyundai Parts bearing the Hyundai Marks and/or marks which are identical or nearly identical to the Hyundai Marks and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that Defendant's goods originated with, were manufactured by, or are sponsored by Hyundai constitute a false designation of origin and a false description and representation of Defendant's business and products. Defendant's acts and each of them are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Hyundai, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Hyundai.

80. The aforesaid wrongful acts of Defendant constitute the use of a false designation of origin and false description of representation, in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

81. As a direct and proximate result of Defendant's illegal activities, Hyundai has suffered and will continue to suffer damages, including but not limited to lost profits from lost sales, disgorgement of Defendant's profits, and damages for injury to Hyundai's business, reputation, and goodwill, in an amount presently unknown and to be ascertained at the time of trial.

82. Defendant's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai, including its business, reputation, and goodwill, and will continue to damage and harm Hyundai and deceive the public unless enjoined by this Court. Hyundai has no adequate remedy at law for the continuing injury and harm.

83. Defendant's use of the Hyundai Marks is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing and unlawful use of the Hyundai Marks and an exceptional case within the meaning of the Lanham Act section 35 (15 U.S.C. § 1117). Hyundai is therefore entitled to additional remedies, including but not limited to three times the amount of its actual damages, disgorgement of Defendant's profits, and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

## THIRD CLAIM FOR RELIEF

## FALSE ADVERTISING

## (15 U.S.C. § 1125(a)(1)(B))

84. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 83 above.

85. Defendant's use and threatened continued use in connection with importing, selling, offering for sale, commercial advertising, marketing, promoting,

and packaging the Illegal Gray Market Hyundai Parts bearing the Hyundai Marks and/or marks which are identical or nearly identical to the Hyundai Marks and trade names, trade dress, wrappers, packaging and words, terms, names, symbols, and/or devices that suggest that Defendant's goods originated with, were manufactured by or are sponsored by Hyundai constitutes a false designation of origin and a false description and representation of Defendant's business and products. Each of Defendant's acts misrepresents, in commercial advertising or promotion, the nature, characteristics, qualities, or geographic origin of Defendant's goods.

86. The aforesaid wrongful acts by Defendant constitute the use of a false description of fact, or false or misleading representation of fact, in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)).

87. As a direct and proximate result of Defendant's illegal activities, Hyundai has suffered and will continue to suffer damages, including but not limited to lost profits from lost sales, disgorgement of Defendant's profits, and damage to Hyundai's business, reputation and goodwill, in an amount presently unknown and to be ascertained at the time of trial.

88. Defendant's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai and will continue to damage Hyundai and deceive the public unless enjoined by this Court. Hyundai has no adequate remedy at law for the continuing injury and harm.

89. Defendant's use of the Hyundai Marks, and Defendant's false and misleading descriptions of fact, are deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the Hyundai Marks and an exceptional case within the meaning of the Lanham Act Section 35 (15 U.S.C. § 1117). Hyundai is therefore entitled to recover additional remedies, including but not limited to three times the amount of its actual damages, disgorgement of Defendant's profits, and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

**FOURTH CLAIM FOR RELIEF**

**TRADEMARK DILUTION**

**(15 U.S.C. § 1125(c))**

90. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 89 above.

91. The Hyundai Marks have been and continue to be "famous" as defined by 15 U.S.C. § 1125(c)(1) due to their continued and extensive use in advertising and marketing. The Hyundai Marks were famous well before Defendant began importing, distributing, offering for sale, or selling the Illegal Gray Market Hyundai Parts.

92. Defendant's use and threatened continued use of marks which are identical or nearly identical to the Hyundai Marks, through the unauthorized importation, promotion, distribution, and/or sale of the Illegal Gray Market Hyundai Parts that are not procured through Hyundai's Authorized Chain of Distribution, is likely to dilute, through tarnishment and/or blurring, and injure the value of the Hyundai Marks as indicators of high quality goods that consumers expect from Hyundai, and is done in willful violation of section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

93. As a direct and proximate result of Defendant's illegal activities, Hyundai has suffered and will continue to suffer damages, including but not limited to lost profits from lost sales, disgorgement of Defendant's profits, and damage to Hyundai's business, reputation and goodwill in an amount presently unknown and to be ascertained at the time of trial

94. Defendant's conduct has caused and will continue to cause immediate and irreparable injury to Hyundai, including injury to its business, reputation, and goodwill, and will continue to damage and harm Hyundai and deceive the public unless enjoined by this Court. Hyundai has no adequate remedy at law for this continuing injury and harm.

95. Defendant's dilution of the Hyundai Marks is deliberate, willful, fraudulent, and without any extenuating circumstances, and constitutes a knowing use of the Hyundai Marks and an exceptional case within the meaning of section 35 of the Lanham Act (15 U.S.C. § 1117). Hyundai is therefore entitled to recover additional remedies, including three times the amount of its actual damages, disgorgement of Defendant's profits, and the attorneys' fees and costs incurred in this action.

WHEREFORE, Hyundai seeks judgment as set forth herein.

**FIFTH CLAIM FOR RELIEF**

**COMMON LAW UNFAIR COMPETITION**

96. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 95 above.

97. Hyundai is informed and believes and thereon alleges that Defendant has engaged in and continues to engage in unfair competition by using the Hyundai Marks with the intention of interfering with and trading on the business reputation and goodwill engendered by Hyundai through hard work and diligent effort, "passing off" its goods as those of another, namely Hyundai.

98. Defendant's acts have caused Hyundai competitive injury, as described herein, and specifically have caused Hyundai to incur damages in an amount to be proven at trial consisting of, among other harm, diminution in the value of and goodwill associated with the Hyundai Marks.

99. Defendant's acts as alleged above, and specifically, without limitation, use of the Hyundai Marks, if not enjoined, will continue. Hyundai has no adequate remedy at law the continuing injury and harm.

WHEREFORE, Hyundai seeks judgment as set forth herein.

/ / /

/ / /

/ / /

**SIXTH CLAIM FOR RELIEF**

**UNFAIR COMPETITION**

**(CAL. BUS. & PROF. CODE § 17200)**

100. Hyundai hereby re-alleges the allegations set forth in Paragraphs 1 through 99 above.

101. Defendant's activities, including unlawfully importing, purchasing, promoting, distributing, offering for sale, and/or selling in the United States, without Hyundai's authorization and/or consent, Illegal Gray Market Hyundai Parts, constitutes a violation of sections 1114 and 1125 of the Lanham Act, as alleged above.

102. In addition, Defendant's unauthorized use of the marks which incorporate and are confusingly similar to the Hyundai Marks has caused and/or is likely to cause confusion among consumers, and/or has diluted and/or will continue to dilute the Hyundai Marks.

103. Defendant's activities are calculated to deceive the public and thus constitute an unfair and deceptive business practice.

104. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent business practices, Defendant collected revenues and/or realized profits to which it was and is not entitled.

105. Hyundai seeks restitution and disgorgement of the revenues collected and/or profits realized by Defendant as a result of Defendant's illegal, unfair, and/or deceptive business and advertising practices.

106. Pursuant to California Business and Professions Code sections 17203 and 17535, Hyundai further seeks an order of this Court enjoining Defendant from continuing its wrongful business practices. Unless restrained by this Court, Defendant will continue to engage in illegal, unfair, false and misleading business practices, as alleged above, in violation of sections 17200 and 17500 of the California Business and Professions Code. Hyundai and the public will be irreparably harmed if an order

of the Court enjoining such practices is not granted. Hyundai is therefore entitled to preliminary and permanent injunctions.

107. Hyundai has no adequate remedy at law for the injury alleged in this cause of action, and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

108. In addition to injunctive relief, disgorgement, and restitution, Hyundai is also entitled to all other remedies provided under Business and Professions Code section 17203.

WHEREFORE, Hyundai seeks judgment as alleged herein.

**PRAYER FOR RELIEF**

1. That this Court temporarily, preliminarily, and permanently enjoin and restrain Defendant, its officers, directors, members, managing members, servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with Defendant from:

a. misrepresenting in any way the source of origin or the nature or quality of Defendant's Illegal Gray Market Hyundai Parts;

b. making, manufacturing, importing, using, distributing, shipping, licensing, offering for sale, selling, developing, displaying, delivering, advertising, and/or otherwise marketing, using, selling or disposing of Defendant's Illegal Gray Market Hyundai Parts;

c. Cooperating with any third party in the importation, sourcing, distribution, manufacturing, shipping, using, distributing, shipping, licensing, offering for sale, selling, developing, displaying, delivering, advertising, and/or otherwise marketing, using, selling, or disposing of any Illegal Gray Market Hyundai Parts;

d. disposing of, destroying, moving, relocating, or transferring any and all of Defendant's Illegal Gray Market Hyundai Parts, as well as packaging and other items including advertising, promotion, drawings, transfers,

brochures, catalogs, stationery, business forms, business cards, labels, stickers, etc. relating to Defendant's Illegal Gray Market Hyundai Parts;

e. disposing of, destroying, moving, relocating, or transferring any means for making labels, stickers, packages, discs or other items relating to Defendant's Illegal Gray Market Hyundai Parts, or any packaging, discs, labels, stickers, stationery, business forms, and business cards relating to Defendant's Illegal Gray Market Parts or markings, including art work, screen-printing plates, dies, matrices, decals, and any other equipment; and

f. disposing of, destroying, moving, relocating, or transferring any documents pertaining to the importation, sale, receipt, promotion, advertising, distribution, and/or shipment of Defendant's Illegal Gray Market Hyundai Parts.

2. That this Court order Defendant or any of its officers, directors, members, managing members, shareholder, agents or affiliates to recall any and all products and materials bearing, copying, reproducing, counterfeiting, or simulating the Hyundai Marks or a colorable imitation thereof, the correspondence or other means of communication of which must first be approved by Hyundai prior to being sent out;

3. That this Court order Defendant to file with this Court and serve upon Hyundai within 30-days of being served with this Court's injunction issued in this action, a written affidavit signed by Defendant under oath, setting forth in detail the way Defendant complied with the injunction;

4. That this Court preliminarily and permanently enjoin Defendant from further conduct which infringes the Hyundai Marks;

5. That this Court award Hyundai compensatory damages, including but not limited to Hyundai's actual damages, and/or Defendant's profits, pursuant to 15 U.S.C. §1117(a) and/or as otherwise provided by law;

6. That this Court award Hyundai enhanced and/or treble damages pursuant to 15 U.S.C. § 1117(a), and/or as otherwise provided by law;

7. That this Court award Hyundai its attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

8. That this Court award Hyundai restitution as provided by law;

9. That this Court order Defendant to account to Hyundai for all profits from its infringement of Hyundai Marks;

10. That this Court award Hyundai its costs, disbursements, and attorneys' fees incurred in bringing this action;

11. That this Court award Hyundai prejudgment interest as provided by law; and

12. That this Court award Hyundai such other and further relief as it may deem just and proper.

Dated: September 6, 2019

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ Kenneth E. Keller
Kenneth E. Keller
Attorneys for Plaintiffs
HYUNDAI MOTOR AMERICA, INC. AND HYUNDAI MOTOR COMPANY

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury in this action on any issue triable of right by a jury.

Dated: September 6, 2019

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: /s/ Kenneth E. Keller
Kenneth E. Keller
Attorneys for Plaintiffs
HYUNDAI MOTOR AMERICA, INC. AND HYUNDAI MOTOR COMPANY